### COMMONWEALTH *vs.* WILLIAM G. DREW.

The pendency of an indictment is no ground for a plea in abatement to another indictment in the same court for the same cause.

The actual keeping of a building furnished with bowling alleys, and suffering persons to resort there, for hire, gain, or reward, for the purpose of playing at bowls, is an offence within the Rev. Sts. *c.* 50, § 17, whether the person keeping the same does so of his own will, or by the procurement or as the agent or hired man of another, and whether for his own emolument or that of another.

AT the March term, 1847, of the municipal court, the grand jury returned an indictment against William Drew, containing two counts, the first charging him with the offence of keeping a bowling alley, contrary to the provisions of the Rev. Sts. *c.* 50, § 17, and the other charging him with the offence of being a common seller of wine, &c., in contravention of the provisions of the Rev. Sts. *c.* 47, § 1.

In the first count, it was alleged, that the defendant therein named did, "for hire, gain, and reward, unlawfully suffer certain persons, whose names to said jurors are unknown, to resort to a certain building there situate, and by said William Drew then and there actually used and occupied, for the

purpose of playing at a certain game, called bowls and nine-pins, and sometimes bowls and tenpins, the same game being then and there an unlawful game," &c.

The defendant, being arraigned to answer to this indictment, pleaded thereto in abatement, that he was named and known and called by the name of William G. Drew, and not by the name of William Drew, as by the indictment was supposed.

The attorney for the commonwealth demurred, and the defendant joined in demurrer.

At the following term of the municipal court, April, 1847, the grand jury returned an indictment against the defendant, by the name of William G. Drew, charging him with the same offences which were set forth in the first indictment. The defendant, on his arraignment, pleaded in abatement the pendency of the former indictment against him, by the name of William Drew, for the same offences. To this plea, the attorney for the commonwealth, first craving oyer of the former indictment and pleadings, and having the same read to him, demurred ; and the defendant joined in demurrer.

The court, at the next term, overruled the defendant's plea, and ordered him to answer the indictment; whereupon, the defendant pleaded that he was not guilty, and a jury was empanelled and sworn to try the issue.

At the trial, which was before *Cushing*, J., it was in evidence on the part of the commonwealth, that a building in North Grove street, in Boston, was kept for the purpose of playing at a game called tenpins or ninepins, as alleged in the indictment, and that during the time mentioned therein, and for some time previous, the defendant was engaged about the premises, doing business there as though he was the keeper.

The defendant introduced evidence, that one Elijah Drew, the owner, kept and furnished the building and bowling alleys, and that the same were not kept by the defendant ; but that he was only employed with others by Elijah Drew, to take charge of the bowling alleys, as the agent or hired man of the latter

The defendant requested the judge to instruct the jury, upon the evidence relating to the first count: 1. That if the bowling alleys were kept by Elijah Drew, in his own name, and were furnished by him and kept for his benefit and profit, and the defendant was only the hired man or one of the hired men of Elijah Drew, then the defendant was not guilty; 2. That if the defendant was simply employed as a hired man, and the place was kept by another, for such other's gain, and not for the gain of the defendant, then the defendant was not guilty.

The judge refused so to instruct the jury, but instructed them, that if they were satisfied from the evidence, and under the instructions of the court, that the defendant did the acts mentioned in the first count, he would be guilty of the charge therein set forth, although, in so doing, he might have been acting as the agent or hired man of another, in company with other persons, also acting as such agents or hired men.

The jury found the defendant guilty on the first count, and not guilty on the second; and he thereupon alleged exceptions to the order of the court overruling the plea in abatement, and to the instructions and refusal to instruct as above mentioned.

The case was argued and decided at the last November term.

*N. Richardson,* for the defendant.

*S. D. Parker,* (county attorney,) for the commonwealth.

Shaw, C. J. The defendant was tried in the municipal court on an indictment charging him with two distinct offences, in separate counts; one being a violation of the license law, and the other that of keeping a bowling alley for hire and reward. The defendant pleaded in abatement the pendency of another indictment against him for the same causes, under the name of William Drew; to which indictment he had pleaded the misnomer in abatement, but no judgment had been entered. The plea in abatement, in the present case, had been overruled in the municipal court; and the defendant had then by order of court pleaded over the general issue

24 *

upon which he was tried; and on the trial he was acquitted on the count charging him with a violation of the license law, and convicted on that for keeping a bowling alley.

The first exception taken was to the judgment of the court overruling the defendant's plea in abatement.

It appears to us to be a settled rule of law, that the pendency of one indictment is no good plea in abatement to another indictment for the same cause. Whenever either of them — and it is immaterial which — is tried, and a judgment rendered on it, such judgment will afford a good plea *in bar* to the other, either of *autrefois convict* or *autrefois acquit.* But where it is found that there is some mistake in an indictment, as a wrong name or addition, or the like, and the grand jury can be again appealed to, as there can be no amendment of an indictment by the court, the proper course is, for the grand jury to return a new indictment, avoiding the defects in the first. And it is no good ground of abatement, that the former has not been actually discontinued, when the latter is returned.

The authorities, we think, are decisive. The case of *Regina* v. *Goddard*, 2 Ld. Raym. 920, was precisely like the present. It was an indictment for forgery, in which the court held, that it was no good plea in abatement, to an indictment for a misdemeanor, that another indictment was depending for the same cause.

So in the case of *Sir William Withipole*, Cro. C. 134, 147, on an indictment for murder, it was held, that one not acquitted or convicted on one indictment, may be arraigned and held to plead to another indictment for the same cause. *The King* v. *Stratton*, 1 Doug. 239; 4 Hawk. P. C. 309; Foster's C. L. 105; 1 Chitty's C. L. 446.

The cases cited by the defendant (*Comm'th* v. *Churchill,* 5 Mass. 175; *Comm'th* v. *Cheney,* 6 Mass. 348) were prosecutions for penalties, in which the whole or a part goes to the informer or prosecutor. There, he who first brings his *qui tam* action, or commences a prosecution by indictment or information, where that remedy is given by law, appropriates

to himself, and acquires a right of action, in the penalty, which action, until it is discontinued or otherwise determined, necessarily excludes all others. Another decisive answer is, that an indictment on the license law is not a prosecution for a penalty, in any proper sense; the offence may be punished by fine, but when it is so, the whole fine goes to the commonwealth; but in certain contingencies, the punishment may be by imprisonment instead of fine.

The other question depends upon the correctness of the direction given by the court. This was a prosecution under the Rev. Sts. *c.* 50, § 17, alleging that the defendant, not being licensed as an innholder or common victualler, did, for hire, gain and reward, unlawfully suffer persons to resort to a certain building by him actually used and occupied, for the purpose of playing at a game called bowls, &c., being then and there an unlawful game. The effect and construction of this statute were fully considered in the case of the *Comm'th* v. *Goding*, 3 Met. 130.

It appears by the exceptions, that there was evidence tending to show that a building was kept in Grove street for bowling, and that the defendant was engaged about the premises doing business there as though he was the keeper thereof.

The defendant offered evidence to show, that one Elijah Drew, who was the owner, kept and furnished the building and bowling alleys, and that the same were not kept by the defendant, but that he was only employed by Elijah Drew, with others, to take charge of the building, as the agent or hired man of Elijah Drew.

The defendant requested the court to give two instructions: 1. That if the alleys were kept by Elijah Drew, in his name, and were furnished and kept for his benefit and profit, and the defendant was only the hired man or one of the hired men of Elijah Drew, then he was not guilty; 2. That if the defendant was simply employed as a hired man, and the place was kept by another, for such other's gain, and not the gain of the defendant, then he was not guilty.

The court declined giving such instructions; and we think

that decision was right. All the facts might be true as assumed for the ground of the first prayer, and yet the defendant might keep the keys, and have the actual use of the building, admit or exclude visitors, receive money for admission, and do every act incident to the keeping of it, as a place of public resort, for playing at bowls; the very thing intended to be prohibited by the statute. It does not at all follow, that Elijah Drew, upon proof of these facts, might also be liable. But in misdemeanors, where several are liable, all are principals, and each is severally liable. The only question here is, whether the defendant is liable. It seems impossible to distinguish this from the case of the *Comm'th* v. *Hadley*, 11 Met. 66, and the court are of opinion, that the reasons of that case apply strongly to this.

As to the other prayer for instructions, the statute does not make it necessary, in order to charge one with the offence therein prohibited, that he shall directly receive the gain or reward to his own use; though it is obvious, that a man would not be likely to be employed to keep such an establishment, unless it yielded some gain and profit; and it may be reasonably inferred, that his pay must come out of those gains.

But a far more satisfactory answer is, that the criminality of the acts prohibited does not consist in taking money for admission, but in opening and keeping a place of public and common resort, to which access can be had for money, for purposes of unlawful gaming; thus offering temptations to the idle and dissolute, and endangering the quiet and peace of neighborhoods. This is the mischief intended to be prohibited, and it is effectually committed by him who *de facto* keeps the building, and suffers persons to resort there ; whether he does so of his own will or by the procurement of another, and whether for his own emolument or that of another.

The terms used in the statute, " for hire, gain or reward," manifestly characterize the building or place, and designate it as a place of common and indiscriminate resort, dangerous

to the morals and peace of the community, which the statute was designed to suppress.

The court are also of opinion, that the instruction actually given was correct. This was, that if the jury were satisfied, that the defendant did the acts, &c., he would be liable, although in so doing he was acting as the agent or hired man of another, in company with other persons also acting as such agents or hired men. These acts were the keeping of a bowling alley, and suffering persons to resort there for hire or reward to play at bowls. That he was employed and paid by one living at a distance, perhaps, out of the jurisdiction of the court, who had engaged and furnished the building, and hired men to attend it, is no excuse; he is then the actual keeper, — uses the place, — permits persons to resort to it, — and causes the mischief intended to be prevented. Nor is it an excuse, that others are guilty as well as himself.

*Exceptions overruled.*