Roby v. State.

SAMUEL D. ROBY v. STATE OF NEBRASKA.

FILED JANUARY 23, 1901.   No. 11,712.

1. **Former Information:** PENDENCY: PLEA IN ABATEMENT. The pendency of a former information for the same offense in the same court, furnishes no sufficient ground for plea in abatement.

2. **Evidence:** VERDICT. Evidence examined, and found insufficient to justify the verdict of the jury.

ERROR from the district court for York county. Tried below before GOOD, J. *Reversed.*

*George B. France,* for plaintiff in error.

*Constantine J. Smyth, Attorney General,* and *Willis D. Oldham, Deputy, contra.*

SULLIVAN, J.

Samuel D. Roby was tried and convicted in the district court for York county on an information charging him with having fraudulently and by misrepresentation obtained the signature of Peter Irrthum to a promissory note for $250.

The first point to which attention is directed by the petition in error and brief of counsel is the decision of the trial court sustaining a demurrer to a plea in abatement in which it is alleged that there was another information for the same offense pending against the defendant at the time the present prosecution was initiated. The ruling was correct. In *Commonwealth v. Drew,* 57 Mass., 279, it is said, in an opinion by Chief Justice Shaw, that where it is discovered that an indictment is defective, "the proper course is for the grand jury to return a new indictment, avoiding the defects in the first. And," he continues, "it is no good ground of abatement that the former has not been actually discontinued, when the latter is returned." This decision is cited with approval in *Bartley v. State,* 53 Nebr., 310, 322, in which

the conclusion of the court from a thorough examination of the adjudged cases is thus stated by NORVAL, J.: "The authorities are quite uniform in holding that the pendency of a former indictment for the same offense in the same court is no ground for abatement."

The next contention to be noticed is that the evidence did not justify the jury in finding the defendant guilty. The testimony for the state is exceedingly weak and inconclusive with respect to three elements of the offense; and upon one essential point it is so very unsatisfactory and improbable that we feel constrained to reverse the sentence and award a new trial. After a careful reading of the bill of exceptions we are thoroughly persuaded that the defendant was not convicted because he had committed the crime charged in the information, but because he was guilty of a moral dereliction which resulted in a serious financial loss to the prosecuting witness, an old and ignorant man. The note in question was signed at the law office of Geo. B. France, Esq., in the city of York. About that there is no dispute. Irrthum testified that it was signed on December 16, 1899, while the defendant and four other witnesses testified that it was signed on November 20, 1899. These dates are important, for the reason that the representation which Irrthum says induced him to sign the note was made, if at all, on the road between York and Benedict not earlier than November 25, 1899. The alleged misrepresentation was a statement by Roby that he owned 160 acres of good land on Lincoln creek, in York county. It is not contended that this statement had any immediate relation to the signing of the note, but Irrthum claims that it made an impression on him; that he remembered it and was influenced by it when, some two or three weeks later, he was asked to become surety for the defendant. If the note was really signed on November 20, it is obvious of course that the alleged statement afterwards made by Roby on the road to Benedict did not produce the mischief attributed to it. All the witnesses agree that de-

fendant was the owner of some land in Colorado. It was conveyed to him by Mrs. Bessie Cole on November 20, 1899. The deed was executed at the residence of Col. J. W. Roby, in York; it was witnessed by Peter Irrthum and acknowledged before Geo. B. France as a notary public. This deed was delivered to Irrthum and was in his possession at the time of the trial. He says it was turned over to him for safe-keeping, while the defendant insists that it was given and received as an indemnity against possible loss resulting from his suretyship. France testified that he heard Irrthum ask for the deed just after the note had been signed. He also testified that he took the note to the City National Bank in York on November 20 and there sold it to the president of the bank, Mr. H. M. Childs. This gentleman was called as a witness for the state and testified that he bought the note of Mr. France on November 20. Arthur G. Wray, who was the stenographer in Mr. France's office, stated that the note was signed on November 20; and he fortified his statement with an entry made by him at the time in the office day book. The transaction evidenced by this entry grew out of the sale of the note and could not have preceded that event. Colonel Roby testified that on the day the deed was executed by Mrs. Cole to the defendant, and very shortly after its execution, Irrthum returned to his house and told him that he had signed the note at France's office. Against these five witnesses, three of whom were wholly disinterested, the state produced no evidence worthy of any consideration, except that of the prosecuting witness. He was seventy-eight years old and had no memorandum with which to refresh his recollection. He may have intended to tell the truth, but to us his testimony is, under all the circumstances, utterly incredible. Mrs. Irrthum was a witness for the state, but her testimony on direct examination, which was not of much importance, was squarely contradicted by what she said on the cross-examination. In our opinion, the evidence did not warrant the jury in

reaching the conclusion that the defendant committed the crime charged against him, and the judgment is, therefore, reversed.

REVERSED AND REMANDED.