# CHARLESTON.

STATE *v.* HENAGHAN *et al.*

Submitted February 17, 1914.   Decided March 24, 1914.

1. GAMING—*Indictment—Sufficiency.*

    An indictment under §1, ch. 151, Code, which charges that defendant, ''within one year next preceding the finding of the indictment,'' in a certain building described therein, ''did unlawfully keep and exhibit gaming tables, commonly called slot machines, roulette and other gaming tables,    &#42;   &#42;   being tables of like kind to A. B. C. tables, upon which tables games of chance are played, the chances thereon being unequal and in favor of the keepers and exhibitors thereof'', is sufficient on demurrer.  (p. 707).

2. INDICTMENT AND INFORMATION—*Duplicity.*

    Such indictment charges one offense, and not several and distinct offenses.  (p. 707).

3. GAMING—*Instructions.*

    An instruction correctly propounds the law, applicable to the offense charged in such indictment, which advises the jury ''that if they believe from the evidence beyond a reasonable doubt that the slot machines described in the indictment are gaming tables, and that said machines were so constructed that they offered unequal chances to the player and exhibitors and that the unequal chances were in favor of the exhibitors, then said slot machines are gaming tables of like kind and character to A. B. C. tables.''  (p. 711).

4. CRIMINAL LAW—*Appeal—Bill of Exceptions—Admission of Evidence.*

    This court does not consider, and will treat as waived, a claim that evidence was improperly admitted over objection and exception, unless by bill of exceptions attention is directed to the evidence

complained of. A bill of exceptions making all the evidence in the case part of the record will not avail, though therein is noted the introduction of such evidence and the objection and exception thereto, unless the record discloses reliance on such objection in support of a motion for a new trial. (p. 711).

5. GAMING—*Keeping and Exhibiting Gaming Tables—Persons Liable.*
    All persons who keep or exhibit the gaming tables named in §1, ch. 151, Code, or other tables of like kind not specifically mentioned, or who have the possession and custody or control of such tables, or supervise the games played thereon, are the keepers and exhibitors thereof or interested or concerned in keeping them, within the terms of the statute, and, on conviction, are properly punishable thereunder. (p. 711).

6. CRIMINAL LAW—*Criminal Responsibility—Conferring Authority on Another.*
    By the criminal law no man can authorize another to do what he may not lawfully do himself. If he attempts to confer such authority on another criminally responsible, and the unlawful act be done, both are equally guilty and amenadble to punishment. (p. 712).

Error to Circuit Court, Tyler County.

James Henaghan and others were convicted of unlawfully keeping and exhibiting gaming tables, and W. J. Flading and certain others bring error.

*Affirmed.*

*J. Bernard Handlan* and *G. T. Knote*, for plaintiffs in error.

*A. A. Lilly*, Attorney General, and *John B. Morrison* and *J. E. Brown*, Assistant Attorneys General, for the State.

LYNCH, JUDGE:

James Henaghan and five others were jointly indicted at the January term, 1912, of the circuit court of Tyler county. The charge preferred is that, in a building definitely described, they "did unlawfully keep and exhibit gaming tables, commonly called slot machines, roulette and other gaming tables, being under denomination to the jurors unknown, being tables of like kind to A. B. C. tables, upon which tables games of chance are played, the chances thereon being unequal and in favor of said keepers and exhibitors thereof, against the peace and dignity of the state."

Before the trial, defendants, by demurrer, challenged the

sufficiency of the indictment. The insufficiency urged is that the indictment charges more than one offense, and that it fails to charge the "distinctive features" of the tables named—these features being that "the chances are unequal, all other things being equal, and the unequal chances are in favor of the exhibitor".

Under the *Heath Case,* 32 Gratt. 873, with which our opinion coincides, the first objection is not tenable. There, the indictment charged that defendant "unlawfully did keep and exhibit gaming tables, called A. B. C. or E. O. tables, faro bank, wheel of fortune, keno table, and tables of like kind, the said tables of like kind being under denominations to the grand jurors unknown, the games played on the tables aforesaid being then and there played with cards", without further description. The court held that the indictment charged one offense only. So we hold in this case. From the language used, it readily appears that the defendants are charged with keeping and exhibiting, not one, but several tables, some specifically named, others as under denominations to the jurors unknown, on all of which the chances are unequal and favorable to the keeper or exhibitor, and that all the tables were unlawfully kept and exhibited by the defendants at the same time and place. The indictment sufficiently apprised them of the offense they were required to answer.

Was the omission of the phrase "all other things being equal", sometimes injected, as it seems, between the phrases "the chances being unequal" and "the unequal chances being in favor of the" keeper or exhibitor, fatal on demurrer? Defendants cite *Wyatt's Case,* 6 Rand. 694; *Huff's Case,* 14 Gratt. 648; *Nuckoll's Case,* 32 Gratt. 884, and *Gaughan's Case,* 55 W. Va. 692. While the syllabus of the first three cases contain the phrase "all other things being equal", the indictments do not use these terms, at least so far as disclosed in any of the opinions. The charge in the Wyatt case, on the trial of which defendant was convicted, and the convictions sustained on writ of error, was that he "did keep and exhibit a certain unlawful gaming table, called hap-hazard * * , being a gaming table of the same or like kind with faro bank, whereon and whereat divers persons did then and there, together with the said Dickerson Wyatt, the

keeper thereof, unlawfully, wickedly and wilfully play, and the games then and there played thereon being games played with cards, etc.'' So far as disclosed in any of the cases cited excepting *State* v. *Gaughan,* nothing was said in the indictment as to chances, whether equal or unequal, or, if unequal, in whose favor the chances prevailed.

In the Huff case, the defendant was ''presented for keeping and exhibiting an unlawful game played with dice, called chuckaluck'', without further description of the nature of the game or of its similarity to any of the tables specified in the Virginia statute, substantially §1, ch. 151, Code of this state. Again, in the Nuckolls case the indictment was sustained, although it contained no averment as to chances. After stating the several tables mentioned in the statute, and others not mentioned, the indictment charged that ''the games then and there played on the tables aforesaid (were) games played with cards''. The indictment was sufficient, of course, because it specifically charged the keeping of tables denounced by the statute. The judgment of the trial court was reversed solely because of the insufficiency of the evidence to sustain the conviction.

The indictment in the Gaughan case contained the phrase of the omission of which defendants here complain. But the instruction in the case cited omits it. The propriety of this instruction was the sole question which this court deemed it necessary to mention in the syllabus. It instructed the jury that if it ''shall believe from the evidence beyond a reasonable doubt that the slot machine described in the indictment is a gaming table, and that said machine is so constructed that it offers unequal chances to the player and exhibitor, and that the unequal chances are in favor of the exhibitor of said machine, then the slot machine is a gaming table of like kind and character to A. B. C. and E. O. tables, faro bank and keno table''. There is no clause requiring the jury to find all other things to be equal. The instruction, in effect, informed the jury that, in order to determine whether a slot machine was of a kind like any of the tables the keeping of which the statute inhibited, it was necessary only to find the chances of winning thereon unequal and favorable to the keeper. ''The four games named (in the statute) are all games of une-

qual chances, and the unequal chances are in favor of the keeper or exhibitor of the games. The skill of the player or his luck can not affect the general result of the game. From the very nature of these games, the keeper or exhibitor will win oftener than the player''. This, therefore, being the ''distinctive feature'' of the four games, all other games possessing the same general character are games of like kind, within the meaning of the statute. *State* v. *Gaughan, supra.*

Involved in the same question is the sufficiency of the proof adduced by the state to sustain the conviction. For this reason, we further treat the objection to the indictment and the motion for a new trial together. The evidence of several witnesses examined on behalf of the state tends to establish the similarity or likeness of a slot machine, the keeping or exhibition of which was the chief accusation, to the tables mentioned in §1, ch. 151, Code. These witnesses agree in saying, in substance, that they and others whom they saw playing, generally lost. The witness Crawford testifies that he frequently played, and that at the same and different times he saw others play on four different slot machines kept and exhibited in the place and within the period designated in the indictment. When asked whether the slot machines would deliver the money if he won, he says: ''It never happened to me that way when I played''. The witness Fletcher testifies that he played on one slot machine ''a hundred times'', on another not over ten times, and frequently saw others play on them; that the chances of winning were in favor of the machine, and that, although he had played an indefinite number of times, he lost oftener than he won. He says he saw others win and lose. Other witnesses testify to the presence of slot machines in the place designated, during the time alleged in the indictment, as to the number and operation of the machines, the persons who were apparently in charge of them, and to some extent the manner in which they were played and the chances of winning. Therefore, considering the indictment only in view of the principles announced in the cases cited, we conclude that the demurrer to the indictment was properly overruled, and that the evidence fully identifies the slot machines as those the keeping or exhibition of which the statute was designed to prevent.

We decline to attach to the phrase "all other things being equal" that high degree of importance claimed by the defendants. The very nature and purpose of the machine, apparent even from the partial description by reluctant witnesses and their experience in an effort to play it to their advantage. clearly bring it within the inhibition of the statute. How other things could be equal, in an attempt to operate a slot-machine with profit to the player, can not be said to be obvious. They are not intended to profit the player. They are not constructed and kept or exhibited with that end in view. The keeper or exhibitor profits; no other person can profit, even with the odds of five to one in favor of the player when (if ever) he wins. To say that an indictment must contain the averment omitted, under such conditions, savors somewhat of a sacrifice of substance for mere shadow.

Defendants'objection to instruction No. 4, given on motion of the state, in the language of the instruction in the Gaughan case, needs no further discussion. No. 6 again directed attention, in the usual and proper manner, to the inequality of the chances in playing on the slot machine, and advised the jury to find against the defendants or such of them as the jury believed from the evidence beyond a reasonable doubt kept or exhibited the gaming tables. The objection urged against this instruction is the omission of the phrase "all other things being equal", of the necessity for the insertion of which enough has been said to indicate the view entertained by this court.

Defendants complain, in argument, of certain rulings in admitting testimony of certain witnesses examined on behalf of the state. But, as these rulings are not brought to the court's attention by bills of exception, or upon motion for a new trial, specifically stating the evidence deemed inadmissible, we are not required to notice, and do not therefore discuss, this error, if any was committed as suggested by counsel in argument. *Halstead* v. *Horton*, 38 W. Va. 727; *Gregory* v. *Railroad Co.*, 37 W. Va. 606; *State* v. *Bingham*, 42 W. Va. 234.

Again, defendants complain of their conviction, on the ground that the evidence does not expressly show they kept or exhibited the slot machines. Their guilt or innocence, under

the proof, was for jury determination. With the result of the
trial we can not interfere, if the evidence was sufficient to
sustain a conviction. Was it sufficient? The state proved
that the defendants who claim to be aggrieved were present
as bar tenders in the saloon where the slot machines were lo-
cated, and were engaged in the management and control and
had the custody of the machines, so far as such management,
control and custody were necessary; that, when the machines
failed to deliver to the player the amount due him when by
chance he won, some one of the defendants would pay the win-
ner out of the moneys collected by them from patrons of the
saloon. Each defendant was in this manner shown to have
directly participated in aid of the machines. The jury not
improperly deemed the proof thus adduced, and not contro-
verted, sufficient to show the guilt of those who were in the
undisputed control of the saloon and all its profit-producing
appliances. This evidence fully established the fact that the
defendants had the control and management of the room,
and were empowered to regulate and determine the acts and
conduct of other persons there assembled, and could have pre-
vented them from playing the machines if they had so desired.
They were, therefore, in a legal sense, the keepers and exhibit-
ors of the machines then operated in the room thus con-
trolled by them.

The section under which defendants were convicted pro-
vides that any person who shall keep or exhibit any of the
gaming tables named therein, ''or shall be a partner or con-
cerned in interest'', shall be punished. The case of *Bibb* v.
*State,* 84 Ala. 13, in construing a statute in effect similar to
ours, holds that the person having posesssion or custody of
the table, authority over its use, and supervising the game,
is the keeper or is interested or concerned in keeping it. ''A
party who has a place in the room where the said game
(keno) is exhibited and carried on, and sells to persons who
play the cards used in playing the same, is, within the mean-
ing of §3621, interested or concerned in keeping or exhibit-
ing a table for gaming''. *Miller* v. *State,* 48 Ala. 122. It
is not necessary to prove that the person charged was the
owner. He is equally guilty, whether he acted as principal,
or as agent or servant of the owner. *United States* v. *Con-*

*ners,* Fed. Cas. 14846, 1 Cranch C. C. 102; *Trimble* v. *State,* 27 Ark. 355; *Com.* v. *Drew,* 57 Mass. 279; *State* v. *Merchant,* 15 R. I. 539; *Lettz* v. *State,* 21 S. W. (Tex.) 371. The relation of principal and agent, or of employer and employee, is not recognized in the criminal law. By that law, every man must stand for himself. No man can authorize another to do what he may not lawfully do himself. If the attempt to confer such authority be made, and the unlawful act be done, both are guilty. *Adkins* v. *State,* 95 Tenn. 474.

These authorities fully sustain the conviction of defendants, in view of the evidence upon which it is based. Seeing no error in the judgment, it is affirmed.

*Affirmed.*