**UNITED STATES of America**

v.

**Eddie SOLOMON, alias Howard Cleve; Roy Poore, alias Robert Byers, alias Howard Cleve; and Earl Setser.**

**No. 3657.**

United States District Court
S. D. Illinois, N. D.

Feb. 20, 1959.

On Rehearing May 27, 1960.

Harlington ·Wood, Jr., U. S. Atty.
Springfield; Ill., for plaintiff.

Robert B. Oxtoby, Van Meter & Oxtoby, Springfield, Ill., Richard Y. Rowe, Jr., Jacksonville, Ill., for defendants.

MERCER, Chief Judge.

This cause arose on a seven count indictment against defendants, the first six counts alleging substantive offenses in violation of federal law and the seventh count alleging a conspiracy between defendants and others to commit the acts alleged in the substantive counts.

Counts One, Two and Three of the indictment charge offenses in violation of the Mail Fraud Statute, 18 U.S.C.A. § 1341. Count One alleges that on or about August 12, 1957 defendants, for the purpose of executing a scheme to defraud as therein alleged, deposited for collection with a bank at Tupelo, Mississippi, a check drawn on a bank at Raritan, Illinois, "which check the defendants knowingly caused to be sent by the post office establishment of the United States through regular banking channels and to be delivered according to directions thereon," to the bank at Raritan, Illinois, in violation of said statute. Counts Two and Three, in essentially identical language, allege that defendants violated the same statute by depositing with a bank at Tupelo, Mississippi, for collection checks drawn, respectively, on a bank at Table Grove, Illinois, and on a bank at Galesburg, Illinois.

Count Four alleges that defendants transported a certain, specifically identified Cadillac automobile in interstate commerce from Indianapolis, Indiana, to Moline, Illinois, "and the defendants then knew the aforesaid motor vehicle to have been stolen" in violation of the National Motor Vehicle Theft Act, commonly known as the Dyer Act, 18 U.S.C.A. § 2312.

Count Five, based upon the same check alleged in Count Two, alleges that defendants did knowingly cause to be transported in interstate commerce from Tupelo, Mississippi, to Table Grove, Illinois, a falsely made and forged check with knowledge that the drawer's signature thereon was forged and falsely made in violation of the National Stolen Property Act, 18 U.S.C.A. § 2314. Count Six, in like language, alleges a violation of said Section 2314 in the transaction involving the deposit for collection of the check drawn on the bank at Raritan, Illinois, which check forms the basis for the charge alleged in Count One.

Count Seven alleges that defendants, from about June 12, 1957, to and including the 31st day of August, 1957, conspired together and with others to commit the substantive offenses which are alleged in Counts One to Six, inclusive, in violation of 18 U.S.C.A. § 371.

Defendants entered a plea of not guilty on all counts. Thereafter, on October 7, 1958, defendants filed four pretrial motions directed against the indictment, viz.: (1) Motion to Dismiss; (2) Motion for Discovery and Inspection; (3) Motion for Bill of Particulars and Subpoena Duces Tecum; and, (4) Motion to Compel Election. The several motions are hereinafter considered in the order noted.

**I.**

In their motion to dismiss, defendants assert 11 separate contentions against the sufficiency or legality of the indictment, or various counts thereof. Each of those contentions has been considered by the court and each is found to be without merit. A statement of the basis for each such finding would serve no purpose other than to lengthen this opinion, and the following remarks are addressed to those contentions upon which defendants seem principally to rely.

First, defendants contend that Counts One, Two and Three, alleging offenses under the mail fraud statute, contain no allegations that defendants in any manner utilized the post office establishment; that, conversely, each of those counts shows on its face that certain banking houses, not defendants, utilized the mails. The contention, on its face, seems logically meritorious, but can avail

defendants nothing in view of the decision in Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435.

The facts of Pereira are strikingly similar to the facts alleged in this indictment. In that case, Pereira and another had devised a confidence scheme with the objective of separating a wealthy widow from a substantial sum of her money. The objective was accomplished when the widow caused a check drawn on a bank at Los Angeles, California, to be delivered to Pereira. Pereira then deposited the check for collection at a bank in El Paso, Texas. Pereira and his accomplice were indicted and found guilty on each of three counts of an indictment founded upon that transaction which charged, respectively, violation of the mail fraud statute, violation of the National Stolen Property Act and conspiracy to commit the mail fraud and stolen property offenses.

Pertinent to defendants' contention here, the Court, in affirming a judgment of conviction, said at 347 U.S. at pages 8–9, 74 S.Ct. at page 362:

"The elements of the offense of mail fraud under 18 U.S.C. (Supp. V) § 1341 [18 U.S.C.A. § 1341], are (1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme. It is not necessary that the scheme contemplate the use of the mails as an essential element. * * * Here, the scheme to defraud is established, and the mailing of the check by the bank, incident to an essential part of the scheme, is established. There remains only the question whether Pereira 'caused' the mailing. That question is easily answered. Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used. United States v. Kenofskey, 243 U.S. 440 [37 S.Ct. 438, 61

L.Ed. 836]. The conclusion that Pereira's conviction under this count was proper follows naturally from these factors."

The quoted language disposes of defendants' first principal contention.

■■ Secondly, defendants contend that Counts Five and Six, each purporting to charge an offense in violation of the National Stolen Property Act, 18 U.S.C.A. § 2314, fail to set forth the securities therein alleged, or the tenor thereof, with sufficient certainty to permit defendants to prepare for trial and to plead a conviction or acquittal upon said counts as a bar to further prosecution for the same offense.

Summarized, each of these counts alleges that defendants knowingly transported and caused to be transported in interstate commerce a falsely made and forged security. In each count, the security alleged is described as a check, which is further described as to its date, amount, name of payee, name of drawee bank, the name of the purported drawer thereof and the point outside the State of Illinois from which the check was transported into the State of Illinois and this Judicial District.

Though I think it desirable that the tenor of an alleged security be set forth in the indictment on a charge of this nature, Counts Five and Six are sufficiently complete to advise defendants of the charge they are to meet and to protect them from future prosecution for the same offense. A contention similar to that here advanced was before the court in United States v. Taylor, 2 Cir., 207 F. 2d 437. In a 225 count information the government alleged that Taylor had deposited for collection in divers banks outside the State of New York a number of forged checks, purportedly drawn on accounts in a New York bank, and thereby had caused the same to be transported in interstate commerce in violation of said § 2314. In sustaining the sufficiency of the information the court held that the description of each check by date,

amount, name of payee, name of drawee bank, the account upon which the check was purportedly drawn and the point outside the State of New York from which the check had been transported into that State constituted a sufficient allegation of an offense under the stolen property statute. I think the Taylor decision is correct and should be followed in this case. Counts Five and Six are sufficiently precise to satisfy the requirements of Rule 7, Fed.Rules Crim.Proc., 18 U.S.C.A.

Thirdly, defendants contend that either the substantive counts, Counts One to Six, inclusive, of Count Seven, alleging a conspiracy to commit the substantive offenses alleged in the prior counts should be dismissed for the reason that prosecution on both the substantive counts and the conspiracy count would constitute double jeopardy. The contention is also squarely opposed to the Pereira decision and must, therefore, be overruled. In Pereira, the Court held that the commission of a substantive offense and the effecting of a conspiracy to commit the offense "are separate and distinct crimes, and a plea of double jeopardy is no defense to a conviction for both." Pereira v. United States, 347 U. S. 1, 11, 74 S.Ct. 358, 364, 98 L.Ed. 435. As the Court there pointed out, the deposit for collection of a falsely made check purportedly drawn upon a bank in another state may constitute three separate federal offenses, i. e., mail fraud, violation of the stolen property act, and when done in concert by two or more persons, conspiracy. The elements of each offense are different and, therefore, prosecution for all does not sustain a claim of double jeopardy. Pereira v. United States, supra, 347 U.S. at pages 8–9, 11, 74 S.Ct. at pages 362–363, 364.

The motion to dismiss is overruled.

## II.

Upon considering defendants' motions for discovery and inspection and for a bill of particulars, the court is convinced that said motions should be, and they hereby are, allowed to the following extent:

1. The government shall produce for copying and inspection, or furnish to defendants a true and correct copy of, the following documents, to-wit:

a. The checks which are alleged in Counts One, Two, Three, Five and Six;

b. Signature card and ledger of the alleged bank account at the Bank of Tupelo, Tupelo, Mississippi;

c. All installment contracts, automobile title documents and checks upon which the government relies to sustain the charges made in the indictment.

2. In addition to furnishing the above documents for inspection, the government shall file a bill of particulars setting forth the following information, to-wit:

a. The names and addresses of all persons, firms and corporations who comprise the class of persons in the indictment described as "buyers, sellers, auctions and finance companies";

b. The names and addresses of all persons who have knowledge of facts relevant to the issues of intent and the existence of a pattern or scheme of conduct by defendants to defraud;

c. The source, or sources, from which title documents reflecting a good and unencumbered title to automobiles were secured as alleged in the indictment;

d. The number of automobiles involved in the alleged scheme to defraud.

e. The name and address of the owner of the automobile alleged in Count Four to have been stolen, and the names and addresses of the persons, or person, who had stolen said automobile;

f. The addresses of Boyce Roy Carter and Everett Johnson if they be actual persons; if they be fictitious persons, the bill of particulars should so state;

g. The number, and names and addresses of other persons with whom defendants allegedly conspired and confederated as alleged in Count Seven.

h. The prior criminal record of Amp Poore;

i. The names and addresses of expert witnesses upon whom the government will rely in the trial of this cause; and

j. The names and addresses of all persons who have knowledge of facts relevant to the transactions alleged in the indictment.

Defendants pray also for an order to compel the government to have available to defendants at the time of trial all prior statements of all witnesses whom it will then call. The Court need not rule upon that prayer. An order at this time could neither add to nor detract from defendants' right to compel the production of such statements at the time and in the manner contemplated under the provisions of Title 18 U.S.C.A. § 3500.

Subject to the exceptions hereinabove expressly delineated, the said motions for discovery and inspection and for a bill of particulars are overruled.

### III.

The fourth motion now before the Court is defendants' motion (1) to compel the government to elect upon which of the substantive counts it will proceed and (2) to elect whether it will proceed upon the substantive counts, Counts One– Six, inclusive, or upon the conspiracy count, Count Seven.

■■ A motion to compel election between counts of an indictment is addressed to the sound discretion of the trial court. Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101; United States v. Hunt, 7 Cir., 120 F.2d 592, certiorari denied 314 U.S. 625, 62 S.Ct. 97, 86 L.Ed. 502; Arnold v. United States, 7 Cir., 7 F.2d 867. Unless it appears that the rights of defendants would be prejudiced and that they would be embarrassed in their defense by the fact of being tried upon multiple charges before the same jury, a court should not compel election between counts properly joined in an indictment.

■ There is no reason to require an election as beween the substantive counts.

The six substantive offenses charged are closely related in point of time, and each is alleged to be a part of a single continuing scheme to defraud. To some degree it appears that the same evidence may tend to prove each of the six counts, or at least tend to prove the mail fraud and stolen property counts. The court cannot say that defendants will be prejudiced by a joint trial on the substantive counts.

■ A more serious question is presented by the motion to compel election between the substantive counts and the conspiracy count. Of necessity, to some extent, a jury sitting on the trial of this cause will be faced with a mass of evidence relating to all, or a number, of the counts, and also with evidence which relates to each count alone. While it appears to be true that much of the evidence introduced to prove the substantive counts will be relevant also to the conspiracy charge, trial of the conspiracy count with the substantive counts can be expected to flood the jury with a mass of evidence admissible on the conspiracy charge only. At best, contemplation of a trial of all 7 counts simultaneously suggests that the situation would be very confusing for any jury. In its worst light, the contemplated situation inherently contains the probability of prejudice to defendants inasmuch as evidence admissible upon the conspiracy count alone must perforce affect the jury's thinking when it considers the fact questions presented by the substantive counts.

Mr. Justice Jackson, concurring in Krulewitch v. United States, 336 U.S. 440, 445, 69 S.Ct. 716, 719, 93 L.Ed. 790, ably discussed the pitfalls for a defendant in a trial upon a scattergun indictment including a conspiracy charge. Among the dangers of a proceeding of that nature, he included the morass of evidence, irrelevant to the substantive charge, upon which the existence of the conspiracy charge brings to bear on the whole case. To protect his rights under the circumstances a defendant is left

with the "unmitigated fiction" that prejudicial effects of such evidence being before the jury can be overcome by a protective instruction, supra, 336 U.S. at page 453, 69 S.Ct. at page 723.

The government has shown no necessity for the use of the conspiracy count, here superimposed upon six other counts each charging a separate substantive offense. There is nothing before the court which suggests that prosecution for the substantive offenses would not adequately cope with the evil effects of defendants' alleged acts. If a prosecution for the substantive offense be adequate, inclusion of the conspiracy count should be carefully scrutinized and separate trials should be had if it appears that the conspiracy count, like a two-edged sword, serves a principal purpose to give the government a procedural advantage and a corresponding advantage of probably prejudicial effect upon the defendants' rights.

Of course there is no basic repugnancy between the counts of this indictment. The substantive charge alleged in each of the first six counts is realleged in count seven as one of the overt acts done pursuant to the alleged conspiracy. But if the court be correct in its view that, inherently, prejudice to defendants' rights could be expected to pervade a simultaneous trial upon this indictment as a whole, then in the exercise of a sound discretion it ought to compel the government to elect whether it will proceed upon the conspiracy count or the substantive counts. The added expense to the government of time and money in trying the conspiracy and substantive charges separately is, of course, a factor to consider, but that is a factor of small moment compared to the probable prejudice to defendants of disposing of all charges in one grandiose trial.

Defendants' motion to compel an election is allowed to the extent that the government be, and hereby is, required to elect whether it will proceed upon counts one to six, inclusive, or upon count seven.

On Motion for Rehearing.

After indictment found, defendants filed a joint motion under Rule 7(f) for a bill of particulars, under Rule 16 for discovery and under Rule 17(c) for an order to compel the government to produce certain documents for defendants' inspection in advance of trial. Fed.R. Crim.Pro. 7(f), 16, 17(c). The indictment in this case is summarized in the memorandum of decision dated February 20, 1959, and it is not necessary to repeat that summary here. Suffice it to state that five counts of the seven count indictment alleged five separate charges of use of the mail to defraud, in violation of 18 U.S.C.A. § 1341, and violation of the National Stolen Property Act, 18 U.S. C.A. § 2314, all alleged as a part of a scheme to defraud divers persons and firms engaged in the business of auto sales and financing.

By the February 20th memorandum order, defendants' motions were allowed to the extent that the government was ordered to furnish a bill of particulars, as delineated in such order, and to produce for defendants' inspection in advance of trial, the fraudulent checks alleged in the indictment, the signature card and ledger of the bank account alleged in the indictment and all checks, installment contracts and automobile title documents, as alleged in the indictment, upon which the government relies to sustain the charges made.

The government filed a motion for rehearing, in which it contends that that order should be vacated or modified, contending that the bill of particulars ordered under Rule 7(f) is too broad and that the order permits Rule 17(c) to be used erroneously as a discovery rule.

With respect to the order for production of documents, the government does not object to production of the checks alleged in the indictment or the production of the signature card and ledger of the alleged bank account, provided all of the same are in its possession. The February 20th order presupposes a condition

that these documents be in possession of the government, and, also, that the government will exercise good faith in response thereto and that it will not place such documents beyond its possession at the critical time in which the same are to be produced in advance of trial. Further discussion of the order, so far as it relates to such documents is, therefore unnecessary.

The question remaining under Rule 17 (c) is whether the order to produce for inspection in advance of trial all checks, installment contracts and automobile title documents was properly entered. The government contends that that order would compel it to disclose all of its evidence and would convert Rule 17(c) into a discovery rule.

 The order is subject to a technical objection that the wrong procedure was employed. Rule 17 outlines subpoena procedure for criminal proceedings. Subsection (c) thereof [1] authorizes conventional subpoena *duces tecum* practice for the production of books, papers, docu-

ments or objects desired by either party. A proviso is added that the court, on motion may direct that the papers or objects designated in the subpoena be produced prior to trial for inspection by the parties. Defendants caused no subpoena to issue prior to the presentation of their motion for an order to compel production of the requested documents for inspection in advance of trial. The order directed production of requested papers to the extent above delineated.

Applying the rationale of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 390, 91 L.Ed. 451, the order will not be disturbed on the procedural ground.[2] The order is directed against a party to the cause who appeared and objected to defendants' motion for production and who now renews and expands its objections by the pending motion for rehearing. Any objection which might have been raised on a motion to quash or modify a subpoena could be raised under the procedure here employed. Absent some showing that the procedure employed operates to the detriment of the govern-

---

1. "(c) For production of documentary evidence and of objects.

 "A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys."

2. The Hickman case involved the Federal Rules of Civil Procedure, but its rationale is equally applicable here. In that case, the plaintiff addressed interrogatories and under Rule 33 to the defendants demanding the production of written statements and a summary of oral statements made by known witnesses to the defendants' attorney. The trial court entered an order "apparently under Rule

34" commanding the defendants and their attorney to produce the demanded material.

The Supreme Court held that neither Rule 33 nor Rule 34 procedures could be employed in the circumstances of that case, but that the issue was as squarely presented by the procedure employed as it would have been had plaintiff demanded the materials upon deposition, Rule 26, or by subpoena, Rule 45. The court said that, "The fact that the petitioner may have used the wrong method does not destroy the main 'thrust of his attempt", and, consistently with the liberal construction of the rules, he should not be compelled to follow the empty gesture of a proper procedure "only to reestablish precisely the same basic problem now confronting us." Hickman v. Taylor, 329 U.S. 495, 504–505, 67 S.Ct. 385, 391, 91 L.Ed. 451.

As in Hickman, the court is here confronted with a situation in which the substance of the government's contention is squarely presented irrespective of the use of the right or wrong method to achieve that goal.

ment's position, by comparison with procedure upon issuance and service of a subpoena under Rule 17(c), the order will not be vacated merely because the procedural niceties were not, initially, strictly observed.

 After careful reconsideration, of the propriety of the scope of the order for production of the checks, installment contracts and automobile title documents, I am yet convinced that the order is sound. While Rule 17 does not purport to be a discovery rule, the proviso for production of documents for inspection in advance of trial does establish a procedure which is, in effect, a right of discovery. United States v. Gross, D.C.S.D. N.Y., 24 F.R.D. 138, 140; United States v. Cohen, D.C.S.D.N.Y., 15 F.R.D. 269, 271; to same effect, United States v. Shindler, D.C.S.D.N.Y., 24 F.R.D. 142. As one member of the Advisory Committee on the Federal Rules of Criminal Procedure stated, " * * * 'there is a provision in [Rule 17(c)] that the court may, in the proper case, direct that [subpoenaed materials] be brought into court in advance of the time that they are offered in evidence, so that they may then be inspected in advance, for the purpose of course of enabling the party to see whether he can use it or whether he wants to use it.' " Statement of Mr. Aaron Youngquist, Proceedings of the Institute on Federal Rules of Criminal Procedure, New York University School of Law, quoted and approved Bowman Dairy Co. v. United States, 341 U.S. 214, 220, note 5, 71 S.Ct. 675, 678, 95 L.Ed. 879.

The Bowman opinion establishes the definitive relationship between Rules 16 and 17(c). Although that opinion is not without seeming contradiction within itself, the Court's language can be construed only as a recognition that Rule 17(c) has a limited discovery function in a proper case, to-wit:

" * * * There may be documents and other materials in the possession of the Government not subject to Rule 16 [discovery]. No good reason appears to us why they may not be reached by subpoena under Rule 17(c) as long as they are evidentiary. That is not to say that the materials thus subpoenaed must actually be used in evidence. It is only required that a good-faith effort be made to obtain evidence. The court may control the use of Rule 17(c) to that end by its power to rule on motions to quash or modify.

"It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms. Rule 17 provided for the usual subpoena *ad testificandum* and *duces tecum*, which may be issued by the clerk, with the provision that the court may direct the materials designated in the subpoena *duces tecum* to be produced at a specified time and place for inspection by the defendant. Rule 17(c) was not intended to provide an additional means of discovery. Its chief innovation was to expedite the trial by providing a time and place *before* trial for the inspection of the subpoenaed materials. United States v. Maryland & Virginia Milk Producers Ass'n, [D. C.] 9 F.R.D. 509. However, the plain words of the Rule are not to be ignored. They must be given their ordinary meaning to carry out the purpose of establishing a more liberal policy for the production, inspection and use of materials at the trial. There was no intention to exclude from the reach of process of the defendant any material that had been used before the grand jury or could be used at the trial. In short, any document or other materials, admissible as evidence, obtained by the Government by solicitation or voluntarily from third persons is subject to subpoena. * * *" Bowman Dairy Co. v. United States, 341 U.S.

at pages 219–221, 71 S.Ct. at page 678.

Following the rationale of the Bowman opinion, it would seem to follow that documents in possession of the government may be reached by subpoena duces tecum under Rule 17(c) for examination in advance of trial if the documents sought are evidentiary, if there is a reasonable likelihood that a defendant's efforts to prepare a defense to the charge might be hampered if such document were not produced and if the court be satisfied that a subpoena is grounded upon a good faith effort to obtain evidence.

 From the face of the indictment, in this case, it appears that the documents here demanded are properly producible for inspection in advance of trial under the provisions of that Rule. The indictment alleges a scheme to defraud buyers, sellers, auctions, and finance companies dealing in the sale and financing of automobiles by the use of fictitious bank accounts and fraudulent installment contracts, automobile title documents and checks. It is inconceivable that any of such documents in the possession of the government are not evidentiary. And it seems apparent that defendants cannot adequately prepare to meet the charges laid in the indictment without an opportunity to know the nature and content of, and to evaluate, such documents. I am convinced that defendants' motion must be characterized as a good faith effort to obtain evidence. Whether or not such documents, after production, would be used by defendants as evidence, must depend upon their inspection. Bowman Dairy Co. v. United States, supra, 341 U.S. at pages 219–220, 71 S.Ct. at pages 678–679; Cf., United States v. Gross, supra.

 I am not impressed with the government's contention that the production order compels it to disclose its whole case. If such be the effect of the order that disclosure is consistent with the government's unique position in a criminal trial, namely, as the advocate for the discovery of the truth, not as the advocate for conviction irrespective of truth. I do not hold that the machinery of Rule 17 (c) is available in advance of trial, in every criminal case, but only that the case at bar impresses the court as a proper one for the invocation of that rule.

Insofar as it is addressed to the provisions of the order requiring the production of documents in possession of the government, the government's motion for rehearing is denied.

 The government's motion with respect to the bill of particulars ordered in the February 20th order may be briefly disposed of. The granting or denying of a bill of particulars is discretionary with the trial court. Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545; United States v. Ansani, 7 Cir., 240 F.2d 216, certiorari denied sub nom. Milner v. United States, 353 U.S. 936, 77 S.Ct. 813, 1 L.Ed.2d 759; United States v. Doyle, 7 Cir., 234 F.2d 788, certiorari denied 352 U.S. 893, 77 S.Ct. 132, 1 L.Ed.2d 87.

 The scope of a bill of particulars, when granted, is largely left to the trial court's discretion as to what particular facts or information are necessary to enable a defendant to prepare his defense to the charge of an indictment and to avoid surprise in the trial of the cause. Cf., United States v. Ansani, supra; United States v. Glasser, 7 Cir., 116 F.2d 690, modified on other grounds, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Hughes v. United States, 6 Cir., 114 F.2d 285. When a bill of particulars is warranted, its scope will vary from case to case depending upon the complexity of the charges laid in the indictment. In a proper case, a bill of particulars may require the disclosure of the identity of witnesses or persons who have knowledge of the transaction charged.

I think the case at bar is one in which considerable breadth of a bill of particulars is justified if defendants are to be able to prepare a defense, to know the nature of the charge against them and to

avoid surprise in the trial of the case. The scope of the order here, with the single exception hereinafter noted, is justified by the nature of the charges made in this indictment.

The motion for rehearing and for modification of the order for bill of particulars will, therefore, be denied with the exception that subparagraph h of paragraph 2 thereof, which requires production of the prior criminal record of Amp Poore, was improvidently entered and will be expunged.

The order is hereby modified by expunging paragraph 2h thereof. The government's motion for rehearing and reconsideration of the order is in all other respects denied.