UNITED STATES of America, Plaintiff,

v.

Charles Frederick TEEMER, Joseph N. Pecora, Domenic Caputo, Sidney Bahm, Joseph Tamburro, Paul A. Bello, Michael Simera and Alex E. Zrinyi, Jr., Defendants.

UNITED STATES of America, Plaintiff,

v.

Abraham SILVERHART, Peter Short, Domenic Bieno, Joseph Rizzo and Louis Anzelone, Jr., Defendants.

Crim. No. 7422, 7423.

United States District Court
N. D. West Virginia,
at Wheeling.

March 19, 1963.

Robert E. Maxwell, U. S. Atty., John
H. Kamlowsky, Asst. U. S. Atty., Alfred
N. King, Atty. Dept. of Justice, for the
Government.

Gilbert S. Bachmann, John B. Garden
(Bachmann, Hess, Bachmann & Garden),
Wheeling, W. Va., for defendants.

CHARLES F. PAUL, District Judge.

These related criminal prosecutions concern the application of the relatively new Title 18, Section 1952[1] aimed at gambling and certain other violations of State law having interstate aspects.

The cases are before me on pre-trial motions to dismiss the indictments and other motions.

The indictment in No. 7423 is in eight counts. Count One[2] is a so-called "conspiracy" count invoking Title 18, Section 371 (with reference to conspiracy), Section 1952 and (apparently with reference to Teemer and Pecora) Section 2.

Counts Two through Eight each charge Teemer and Pecora (apparently as aiders and abettors) and one of the other defendants with substantive offenses, constituting violations of Section 1952, on differing dates involving different acts of travel or use of facilities. In each of these counts the offense is charged in substantially the same language as that contained in the paragraph lettered A. in Count One (see Footnote 2).

1. Section 1952, in pertinent part, is as follows:

"(a) Whoever travels in interstate * * * commerce or uses any facility in interstate * * * commerce, including the mail, with intent to—

"(1) * * *

"(2) * * *

"(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

"(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling, * * * in violation of the laws of the State in which committed * * *."

2. Count One of the indictment in 7423, in pertinent part, charges:

"From on or about September 13, 1961, the exact date being to the Grand Jurors unknown, and continuously thereafter until on or about February 15, 1963, the defendants * * * did unlawfully, feloniously, willfully and knowingly conspire, combine, confederate and agree together, and with each other, and with Lilliam Bahm, Anthony Capizzi, * * *, co-conspirators, but not defendants herein * * *, to commit offenses against the United States of America, that is to say:

"A. To travel in interstate commerce and to use facilities in interstate commerce with intent to promote, manage, carry on and facilitate the promotion, management and carrying on of an unlawful activity, to wit, a business enterprise involving gambling known as the Jockey Club, located near Chester, Hancock County, West Virginia, and involving the keeping and exhibiting of gaming tables and other devices to be used, and used, in conducting games of unequal chance, * * * said unequal chances being in favor of the keeper and exhibitor of the said gaming tables and other devices, in violation of Chapter 61, Article 10, Section 1, Code of West Virginia, * * * and thereafter would, and did, perform acts of promotion, management, carrying on and facilitating the promotion, management and carrying on of said unlawful gambling activities; in violation of Title 18, United State Code, Section 1952 and Section 2. All in violation of Title 18, United States Code, Section 371."

Then follows the listing of some thirteen so-called "overt acts".

The omitted portions include the balance of the names of some forty-four non-defendant co-conspirators (including the names of the five defendants in No. 7422). In its bill of particulars the Government charges that these forty-four are or were employees of the Jockey Club, in various capacities. At the hearing on these motions, the Government's counsel admitted that they have no present intention of attempting to introduce extrajudicial statements or admissions by any of these forty-four implicating the charged defendants or of proving overt acts by these non-defendants in lieu of the overt acts charged in the indictment or other overt acts performed by the defendants. On questioning, they explained that the reason for naming these forty-four non-defendants in the indictment was to "apprise the defendants of the scope of the unlawful activities". Unless Government's counsel can come up with a better reason than this for the inclusion of these names in the indictment and the consequent injection into the case of the issue as to whether they were or were not co-conspirators, I will, on motion, strike these charges from Count One as surplusage, under F.R. Cr.P. Rule 7(d).

The indictment in No. 7422 is in one count, charging the five defendants jointly with violation of Section 1952 "(o)n or about the 6th day of October, 1962" in substantially the same language as said paragraph A. of Count One in No. 7423. Why these five were indicted separately is unexplained. When the court suggested the consolidation for trial of 7422 with 7423, the defendants specifically objected and the Government's counsel did not indicate any position on the matter, although it was admitted by all parties that, if tried separately, the cases would involve much, if not all, of the same testimony. I will consider at a later time whether consolidation under F.R. Cr.P.Rule 13 would effect any prejudice justifying separate trial under Rule 14.

From the indictments, the bill of particulars heretofore supplied upon the court's order, and from what I hope are permissible inferences from the guarded language of both, I gather that the following is a fair statement of some of the facts which the Government hopes to prove:

Teemer is the owner and principal operator, and Pecora is his right-hand man, in the operation of a gambling club or casino known as the Jockey Club, located on U. S. 30 in the narrow northern panhandle of West Virginia. The Pennsylvania-West Virginia state line is less than a mile east of the Jockey Club, and the Ohio-West Virginia line is about four miles to the west. The principal, if not the only, business of the Jockey Club is gambling. For this purpose, it maintained roulette wheels and tables, "crap" tables, a blackjack table and slot machines. It also maintained some food and drink services for its customers. All of the defendants, other than Teemer and Pecora, were employed by one or the other of them in various phases of the "business enterprise".

West Virginia has a statute (Code Chapter 61, Article 10, Section 1; Michie's Code 6094) which makes it a misdemeanor for any person to keep or exhibit or be a partner or concerned in interest in keeping or exhibiting certain gaming tables and devices. Various judicial decisions have held that it was properly established that craps tables and slot machines fitted the statutory definition and that "keepers and exhibitors" include all persons who have the possession and custody or control of such tables, or supervise the games played thereon. See State v. Henaghan, 73 W.Va. 706, 81 S.E. 539.

Some of the employee defendants resided in either Pennsylvania or Ohio, or, while temporarily in West Virginia, maintained a residence for their families in either Pennsylvania or Ohio. All of them traveled from either Pennsylvania or Ohio to the Jockey Club for the purposes of their employment on the respective dates charged, and thereafter performed their appointed tasks. At least one of them traveled back and forth between the Jockey Club and East Liverpool, Ohio, where Teemer maintained a bank account which was used in the business.

The motions to dismiss the indictment in 7423 make the following points:

"1. The statute under which the offense is drawn, § 1952 of Title 18, is repugnant to Article V and Article VI of the Amendments to the Constitution of the United States.

"2. Each count of the indictment is insufficient to charge an offense under the statute for the reason that it states as a legal conclusion in the language of the statute that acts were 'thereafter' performed involving unlawful gambling activities, without stating facts or without describing the nature of the acts or when or where they were performed.

"3. Each count of the indictment fails to plead an offense under the laws of the State of West Virginia."

Subject to the ruling on the motions to dismiss, and in the alternative, the defendants Teemer and Pecora moved to require the Government to consolidate Counts Two through Eight in 7423 into Count Two, and to dismiss the other

counts, on the ground that the Government is attempting to fragment a single prohibited course of conduct into a series of separate crimes.

The defendant Caputo similarly moved to consolidate Counts Two and Three, in which he is named, and to dismiss one or the other.

The defendants also moved to compel an election by the Government as between the conspiracy count and the other count or counts and for severance thereof under F.R.Cr.P. Rule 14.

## THE MOTIONS TO DISMISS

■ 1. Defendants' counsel strenuously insist that Title 18, Section 1952, violates the Fifth and Sixth Amendments to the Constitution because the acts or conduct which it seeks to make criminal are couched in such nebulous terms and in such vague, ambiguous and uncertain language, that persons of ordinary intelligence cannot determine in advance what acts or courses of conduct are proscribed.

The cases cited by the defendants are not apposite to the statute under consideration. The prohibited acts under Section 1952 are not indefinite—the standard is spelled out and it is not vague. It makes it a criminal act for one to travel with intent to promote, manage, establish or carry on, or, facilitate the promotion, etc., of an unlawful activity (in this case, a gambling establishment) when the one, after traveling with such intent, carries the intent into effect or attempts so to do. The only word here used which arguably might require definition is the word "facilitate", and that is a word in common use, whose meaning is well known. It means to help —make easy or less difficult.

Only two officially reported cases, considering the constitutionality of Section 1952, have been uncovered by counsel's research; United States v. Barrow, 212 F.Supp. 837 (E.D.Pa.1962) and United States v. Smith, 209 F.Supp. 907 (E.D. Ill.1962). In both of them the contention of unconstitutionality was rejected.

■ Defendants' counsel posed three hypothetical situations: The milkman making deliveries on his milk route, the charwoman sweeping out the premises, and the case of the man who travels with the requisite intent and, after entry into the State, avails himself of his *locus poenitentiae* and abandons his unlawful purpose for a substantial period of time, then again changes his mind and engages in the unlawful activity within the State. These situations, both as to the reach of the statute by reason of the use of the word "facilitate" and the failure of the statute to fix a limit on the interval of time within which the gambling activities must follow the prohibited act of travel, are farfetched. No court would have difficulty in disposing of them if and when they should arise, and no one— not even a layman—could be misled by the statutory language in these respects. The fact that a criminal statute must be interpreted with reference to its applicability to a given state of facts does not, in itself, render the statute unconstitutionally vague. See United States v. National Dairy Products Corp., 83 S.Ct. 594.

2. The second ground of attack by the defendants upon the indictments advances the argument that there are two essential parts to the offense charged; first, the travel with the requisite intent, and, second, the performance of acts of promotion, et cetera, "thereafter". Admitting that the first of these essentials is properly and sufficiently pleaded in the indictments, defendants contend that the second is pleaded only in the generic terms of the statute, and that it is essential that the specific acts of promotion, et cetera, following the travel be pleaded with particularity, so that the defendants may be apprised of the charges they will be compelled to meet on trial.

The defendants' principal reliance is upon the decision in Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L. Ed.2d 240 (1962). In that case the defendants were charged with failing to answer questions put to them by congressional committees. The statute provides

that the question must be one "pertinent to the question under inquiry". The indictments stated only that the questions asked and unanswered were "pertinent to the question under inquiry", and did not state what the "question under inquiry" was. The Supreme Court held that the indictments were bad because they did not "descend into particulars", and that this failure could not be cured by a bill of particulars. The court pointed out that the Government, throughout the history of the case was inconsistent in its various briefs in describing what the question under congressional inquiry was. It was, therefore, impossible to ascertain if the question at which the witness balked was within or without the scope of congressional inquiry. The opinion, in footnote 18, 369 U.S. at page 771, 82 S.Ct. at page 1051, distinguishes the case of Markham v. United States, 160 U.S. 319, 16 S.Ct. 288, 40 L.Ed. 441 (1895), relied upon by the Government, upon the grounds that the Markham indictment was one for perjury and that its bare allegation that the matter was "material" was sufficient because the materiality of the subject under inquiry "(d)oes not play the *central role* in a perjury prosecution which it plays under 2 U.S.C. § 192." (Emphasis supplied). The Russell case may be distinguishable from the instant case because, here, the core of the offense and the "central role" of the statute aims at travel or the use of interstate facilities with the requisite intent, and the requirement that, thereafter, acts be performed or attempted, is more in the nature of a condition subsequent.

Defendants' counsel attempted to draw an analogy between what they called the two-pronged nature of the offense described in Section 1952 and a conspiracy indictment in which the agreement constituting the conspiracy must be pleaded, followed by an allegation of one or more overt acts. When one examines the nature and extent of the requirement of the allegation of one or more overt acts, the analogy appears to lose its force to the point that it becomes inapposite. As we all know, it is general practice to plead overt acts in a conspiracy indictment so cryptically that they become almost meaningless, and add little or nothing to the bald statement that the defendants, or one or more of them, performed acts in pursuance of the conspiracy. The argument that the pleading of overt acts is necessary to apprise the defendants of the exact nature of the charges against them so that they may be prepared for trial loses all force when we consider that, in a conspiracy case, it is perfectly possible for none of the alleged overt acts to be proved and the proof of others, not charged, will support a conviction. See, e. g., United States v. Downing, 51 F.2d 1030, at 1031 (2 Cir., 1931); United States v. Negro, 164 F.2d 168, at 173 (2 Cir., 1947); United States v. Grunewald, 162 F.Supp. 626, at 628 and 629 (S.D.N.Y.1958).

That the "subsequent acts" averments of the indictments do not go to the *corpus delicti* described in Section 1952 is plain when we consider that the statute does not contain any requirement that such subsequent acts be unlawful either under the statute or under the State law, but simply that they "facilitate" the State-proscribed unlawful activity. It is to be noted that a bill of particulars was ordered and filed in this case to prevent surprise.

Furthermore, it does not appear that these indictments contain merely the "bare bones" of the statutory language. They, and each count in 7423, give the date of the offense; the place where the unlawful activities were being carried on; the name of the establishment in which the unlawful activities were being carried on; the fact that the business enterprise involved gambling; that the offense also involved the keeping and exhibiting of gaming tables and other devices to be used, and used, in games of chance in which the chances were in favor of the keeper and exhibitor; and that it was a common law gaming house. Each indictment and each count then charges that, after traveling with the requisite intent, the defendants took part in or facilitated the

promotion, management and carrying on of the above detailed gambling activities. This seems to be a sufficient compliance with the fundamental purposes of an indictment to inform the defendants of the criminal acts with which they are charged (i. e., the travel with the requisite intent, followed by the requisite participation) and sufficient identification of the criminal acts to enable the defendants to meet a subsequent indictment with the appropriate pleas of double jeopardy or *autrefois acquit*. F.R.Cr.P. Rule 7(c) would seem to require nothing more. The defendants' insistence that the "acts" be specified, rather than that the nature and effect of the acts be pleaded, seems to ask for evidence, rather than charges, in the hope that the testimony will reveal a variance between the indictment and the proof; such as that one charged as a dealer at the blackjack table acted as a croupier at roulette on the day in question.

3. As a third ground of their motion, the defendants seem to contend that, with reference to the allegation that the "activities" are "unlawful" under the State law, the indictment must be so drawn that it complies with all of the technicalities of State law with reference to the sufficiency of an indictment charging the State offense. No authority is cited for this position, and it would seem untenable. McCoy v. Pescor, 145 F.2d 260 (8 Cir., 1944), contains language rejecting this contention.

The motions to dismiss may be denied.

## THE ALTERNATIVE MOTIONS

The first of the alternative motions is the motion to consolidate Counts Three through Eight into Count Two of the indictment in 7423, and to dismiss Counts Three through Eight. The motions are based on the contention that the substantive counts in 7423 may not charge separate offenses but are simply a fragmentation or proliferation of an alleged course of conduct constituting one offense. I am by no means convinced by the defendants' argument and brief on this point. As pointed out in the Government's brief, the "course of conduct" referred to in the Sectional Analysis of the legislative history of Section 1952, refers to the nature of the business promoted or facilitated—and not to the essence of the federal offense, which is "travel". The phrase seems to refer to the fact that the Act was designed to attack an entrenched operation rather than a sporadic poker game or a floating crap game. No act of travel is to be deemed unlawful unless the enterprise is a continuing one; but once the continuity of the enterprise is established, any act of travel, with the requisite intent and the subsequent participation, would seem to be a separate offense, even if the travel is a daily or regular event, and thus, perhaps, a "continuing" activity. If this is the plain and literal meaning of the Act, it is within the power of Congress to make each act of travel a unit of prosecution. See, e. g., Mitchell v. United States, 142 F.2d 480 (10 Cir., 1944); and this, in spite of the distinguishable cases of United States v. Universal CIT Credit Corp., 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952) and Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955).

Assuming that I should later resolve my present doubt on this point in favor of the defendants' contention, I do not believe that the procedure suggested in the defendants' motion is necessary or should now be adopted. Pre-trial election by the Government or the dismissal of counts of the indictment at this time would seem not to be necessary in order to protect the defendants from any prejudicial results. The court can fully protect the affected defendants, in the event of multiple verdicts of guilty, either by entering a judgment of conviction on only one count or by making possible sentences run concurrently. As approving this latter method, see, e. g., United States v. Tolub, 309 F.2d 286 (2 Cir., 1962) and United States v. Martin, 292 F.2d 702 (4 Cir., 1961). See also Fisher v. United States, 231 F.2d 99 (9 Cir., 1956). This alternative motion may be denied at this time and without prejudice to its renewal.

The second of the alternative motions asks that the Government, in 7423, be compelled to elect whether it shall go to trial first on the conspiracy count (Count One) or the substantive offense counts (Counts Two through Eight). The defendants acknowledge that this question of severance rests in the sound discretion of the court under F.R.Cr.P. Rule 14. The exercise of the discretion involves consideration balancing possible prejudice to the defendants in the trial of the several offenses in one trial against the inconvenience and expense to the Government, the court and the jurors of holding separate trials where so many factual and legal issues are in common.

Defendants' counsel inveigh against the "pernicious practice" of charging, as a separate crime, a conspiracy with the overt acts performed by the same defendants who are, in other counts, charged with the substantive offense or offenses. They quote Mr. Justice Jackson in his concurring opinion in Krulewitch v. United States, 336 U.S. 440, at page 445, 69 S.Ct. 716, at page 719, 93 L.Ed. 790 (1949). Defendants also, in citing and urging the action taken in United States v. Solomon, 26 F.R.D. 397 (S.D.Ill.N.D.1960), seem to be asking this court to dismiss entirely the conspiracy count. The practice is too well established at this time to convince this district judge that he should dam the rising tide. During the introduction of testimony and in the court's charge, care in instructing the jury what testimony is relevant to which criminal charge and which defendant, sufficiently can protect each defendant against confusion in the minds of the jury and prejudice thereby. This motion may be denied.

The defendants have also filed a motion for the return of certain illegally seized property and the suppression of evidence with reference thereto upon a claim of excessive and illegal seizure. Counsel advised the court that they expect to substitute for this motion one attacking the execution of the search warrants for the search of the Jockey Club premises and the seizure of all property resulting therefrom. The filed motion will be held in abeyance awaiting the filing and hearing upon the proposed substituted motion.

Orders carrying into effect the rulings herein made shall be entered.